ORDERED.

**Dated:  December 13, 2017**

K. Rodney May
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In re

Colony Beach & Tennis Club, Ltd.                    Case No.:  8:09-bk-22611-KRM
                                                     Chapter 7

        Debtor.

_____/

### MEMORANDUM OPINION AND ORDER
### SUSTAINING TRUSTEE'S OBJECTION TO CLAIM NO. 424

The Internal Revenue Service assessed penalties of $347,490 against the Debtor pursuant

to 26 U.S.C. § 6698(a),[1] because the Chapter 7 Trustee filed the partnership's tax return for the

year ending April 30, 2011 (the "2011 Return") by the date to which the filing deadline could

have been extended, but without having timely requested the extension.  The United States filed

a proof of claim (Claim No. 424-1) in the amount of $356,695.46 for the penalties plus

$9,205.46 of interest.[2]  The claim also includes a $1,535.15 balance for FICA taxes that are not

---

[1] Hereinafter, references to provisions in the Tax Code will be "IRC § _____."  Unless otherwise stated, all other statutory citations are to the Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.*

[2] Pursuant to IRC § 6698(b), penalties are assessed at $195 per month multiplied by the total number of persons who were partners in the partnership during any part of the taxable year.  Here, there were 297 partners, and the 2011 Return was 6 months delinquent.  Hereinafter, all references to the claim refers only to the penalty claim, including interest, unless expressly stated otherwise.

in dispute.[3]  The United States asserts that the entire claim should be given priority as an

administrative expense claim.[4]

     The Trustee objected to the claim and filed a motion to determine Debtor's tax liability

under § 505.[5]  The Trustee contends that the claim should be disallowed because there was

reasonable cause for filing the 2011 Return by the extended filing deadline; alternatively, even if

the penalty is owed, it should have the status of a general unsecured claim that is equitably

subordinated to all other unsecured claims.

     The Court heard argument on July 10, 2017.[6]  For the reasons stated below, the Court

will sustain the Trustee's objection, allowing the claim as an equitably subordinated unsecured

claim.

## FACTUAL BACKGROUND

     The facts are not in dispute.[7]  Debtor was formed as a limited partnership in 1973 to

manage and operate the resort in Longboat Key, Florida, known as the Colony Beach & Tennis

Club.  Debtor filed for protection under Chapter 11 on October 5, 2009.[8]  The Debtor operated in

the Chapter 11 for several months, then closed forever.  On June 11, 2010, William Maloney

---

[3] The total amount claimed in Claim No. 424-1 is $358,230.61, including the FICA claim.

[4] *See* § 503(b).

[5] Doc. Nos. 816 and 1048.  The Trustee also objected to Proof of Claim 39, which is not currently at issue.

[6] The Trustee submitted his declaration as an addition to the record.  Doc. No. 1065.  Trustee also submitted the declaration of Robert Erazmus, one of the Debtor's partners, as evidence that the individual partners timely and accurately received Schedule K-1's.  Doc. No. 1067.

[7] The parties submitted a *Joint Stipulation of Facts*, Doc. No. 1069.

[8] Doc. No. 1.

("Trustee") was appointed as trustee.[9]  Two months later, on August 13, 2010, the case was converted to Chapter 7.  Mr. Maloney continued to serve as trustee.[10]

The Debtor was a pass-through entity.  Any tax liability for its income was passed through to the 297 limited partners.[11]  The Debtor was required annually to file a Form 1065 informational return and distribute Schedule K-1's to the limited partners.[12]

Form 1065 returns are due by the 15th day of the 4th month following the end of the partnership's fiscal year.[13]  That deadline could be extended, routinely, for an additional five months, as long as the Debtor requested the extension prior to the original deadline.[14]  The Debtor's 2011 Return, for the period ending April 30, was due to be filed by August 15, 2011.  If properly extended, the 2011 Return would be considered timely if it had been filed by January 17, 2012.[15]

There is no correspondence or other evidence to establish that an extension of the original filing deadline for the 2011 Return was ever requested.  Nor is there any evidence that the IRS received an extension request.  Nevertheless, the 2011 Return was filed on January 17, 2012.

---

[9] Doc. No. 306.

[10] Doc. No. 337.

[11] IRC §§ 701, 702; *In re Refco Public Commodity Pool, L.P.*, 554 B.R. 736, 742 (Bankr. D. Del. 2016).

[12] IRC §§ 701-704, 6031(b); *Refco*, 554 B.R. at 742.

[13] IRC § 6072(a).  The deadline has recently been shortened to the 15th day of the 3rd month following the end of the fiscal year.

[14] IRC § 6081(a); 26 C.F.R. § 1.6081-2(a)-(b).

[15] Normally, the extension deadline falls on January 15.  But in 2012, that date fell on a Sunday and January 16 was a federal holiday.  Thus, the extended filing date would have been January 17, 2012.

In the absence of an allowed extension, the 2011 Return was considered by the IRS to have been filed late.  It assessed the late-filing penalties on February 6, 2012, and filed the claim at issue on December 12, 2012.[16]

If the United States' claim is allowed and given priority as an administrative expense, holders of general unsecured claims will receive a 68% dividend.  Otherwise, they will receive a dividend of 100%.

<u>ANALYSIS</u>

The penalty at issue here relates to a tax owed by persons other than the Debtor.  Except in limited circumstances, not present here, this court may "determine the amount or legality of any . . . penalty relating to a tax . . . whether or not previously assessed, whether or not paid, and whether or not contested before the adjudication by a judicial administrative tribunal of competent jurisdiction."[17]

It is undisputed that the 2011 Return would have been timely filed if an extension had been requested before August 15, 2011.  The fact that the 2011 Return was filed on the hypothetical extended deadline, January 17, 2012, confirms only the Trustee's claim that he was operating on the assumption that his accountants had filed the extension request; but, there is no indication that anyone had done that.  Thus, the 2011 Return was filed late and the Debtor is subject to penalties pursuant to § 6698 unless it proves that the return was filed late for "reasonable cause."

---

[16] The claim is for penalties and interest that accrued for not having extended the filing deadline, and encompasses the six month period between the original due date and the date in which the 2011 Return was actually filed.  The claim lists $0.00 for "Tax Due."

[17] *See* § 505(a)(1); *Estate of Greenfield v. Comm'r*, 297 F. App'x 858, 861 (11th Cir. 2008); *Refco*, 554 B.R. at 741 (a bankruptcy court's ability to adjudicate a debtor's tax liability is part of the claims allowance process).  Section 505 is a jurisdictional statute.  *In re Custom Distrib. Servs. Inc.*, 224 F.3d 235, 239-40 (3rd Cir. 2000) (observing that § 505(a) has consistently been "interpreted as a jurisdictional statute that confers on the bankruptcy court authority to determine certain tax claims").

Reasonable Cause

"Reasonable cause" is not defined in the Internal Revenue Code.[18]  In *United States v. Boyle*,[19] however, the Supreme Court held that to show "reasonable cause" under IRC § 6651(a), the taxpayer must demonstrate the exercise of ordinary business care and prudence and the inability to file the return within the prescribed time.[20]  Lower court decisions since then have adopted versions of this test and it is appropriate to apply it here.[21]

For example, in *In re Hudson Oil Co., Inc.*,[22] the trustee argued that debtor should be relieved of late filing penalties under IRC § 6651 because the debtor's books were in such disarray that he could not timely file an accurate return.[23]  The debtor had requested an extension to file, but the IRS advised that it would cancel the extension unless $1 million in estimated taxes

---

[18] *Refco*, 554 B.R. at 742.  The term "reasonable cause" is utilized throughout the IRC, normally in conjunction with the phrase "and not due to willful neglect."  But, that phrase is not in IRC § 6698.  *Compare* IRC § 6698 to IRC §§ 6651, 6656, and 6724.  While the parties argue whether "and not due to willful neglect" should be part of this Court's analysis, neither party asserts that there was any willful neglect by the Trustee.

[19] 469 U.S. 241 (1985).

[20] *Id*. at 246.

[21] IRC § 6651(a) has language similar to § 6698, imposing a penalty unless an untimely return was "due to reasonable cause and not due to willful neglect."  IRC § 6698 does not require the demonstration of an absence of willful neglect.  Courts have concluded that "reasonable cause" under IRC § 6698 requires a showing only of ordinary business care and prudence.  *See e.g.*, *In re ACME Music Co., Inc*., 196 B.R. 925, 936 (Bankr. W.D. Penn. 1996) (citing *Sanderling, Inc. v. Comm'r*, 571 F.2d 174, 179 (3rd Cir. 1978)) (Section 6698 reasonable cause "means nothing more than the exercise of ordinary business care and prudence"); *Refco*, 554 B.R. at 742 ("[T]he threshold inquiry [for § 6698 reasonable cause] is whether, based on all the facts and circumstances, the taxpayer exercised ordinary business care and prudence, but was still unable to file a return within the prescribed time.").  *See also Estate of Thouron v. U.S.*, 752 F.3d 311, 313 (3rd Cir. 2014) ("A taxpayer shows reasonable cause [under § 6651] for failure to pay a tax on time by establishing that 'he [or she] exercised ordinary business care and prudence in providing for payment of his [or her] tax liability and was nevertheless either unable to pay the tax or would suffer an undue hardship . . . if he [or she] paid on the due date.'"); *Ensyc Techs. v. Comm'r*, 212 WL 2160435, at *3 (T.C. 2012) (reasonable cause for § 6699 penalties (failure to file S corporation returns) is when the taxpayer exercised ordinary business care and prudence and was nevertheless unable to timely file its return).

[22] 91 B.R. 932 (Bankr. D. Kan. 1988).

[23] *Id*. at 948-49.

was paid, something the trustee was unable to do.[24]  In a contested matter under § 505, the

bankruptcy court found that there was reasonable cause for the late filing because it was

impossible for the trustee to put the return together by the deadline.[25]

> "[Taxpayer] did not file the return late because he somehow mistakenly missed
> the deadline.  [Taxpayer] filed the return late because, in reality, he did not have
> sufficient time to prepare it.  The trustee, his accountants, the estate, and the
> debtors were put in an impossible situation from the start when it came to filing
> the [return]."[26]

A court also found reasonable cause for the late filing by a partnership in *In re Refco*

*Public Commodity Pool, L.P.*[27]  Refco had invested nearly all of its assets in a Cayman Islands

company on which it relied for a Schedule K-1.[28]  The Cayman Islands company itself was in a

liquidation proceeding and had material inaccuracies in its records.[29]  Without a Form K-1 from

the Cayman Islands company, Refco could not prepare its tax return.[30]  The bankruptcy court

determined that Refco's failure to timely file returns was due to events "beyond its control."[31]

According to the Trustee, his filing of the 2011 Return on the date to which the initial

filing deadline could have been extended was due to "reasonable cause:" he was appointed at a

time when Debtor was involved in complex litigation which required his full attention; Debtor's

---

[24] *Id*. at 950.

[25] *Id*. at 950-51.

[26] *Id*. at 932.

[27] 554 B.R. 736, 746 (Bankr. D. Del. 2016).

[28] *Id*. at 743.

[29] *Id*.  The Cayman company had comingled funds, misstated cash and receivables, improperly allocated shares, failed to account for a preference settlement, and failed to process remediations.

[30] *Id*.

[31] *Id*. at 744.

financial records were in disarray, which impeded his ability to reconcile the accounts; and, he faced "significant business, record-keeping and operational challenges."[32]

Here, it is plausible that the Trustee's attention was diverted by ongoing litigation (in which he played the role as mediator between the principal antagonists) shortly before the extension request was due.  But, the record in this case undercuts the Trustee's position.  The 2010 Return (for the period ending April 30, 2010) was also filed late.  No extension was requested for that filing either.  It was not until April 28, 2011 (eight months after the initial due date), that the Trustee filed an application to employ accountants for the purpose of preparing and filing the 2010 Return.[33]  The Trustee also did not file an application to employ accountants to prepare and file the 2011 Return until January 12, 2012, only five days before the return would have been due if an extension had been granted.

The Trustee acknowledges that he did not personally file for an extension for the 2011 Return and he did not delegate the obligation to file the extension to the accountant.[34]  Rather, he states only that he assumed that Debtor's former accountants, whom he did not seek to employ until five months later, were going to file the request for extension of the 2011 Return deadline.[35]  Nevertheless, he maintains that he expected them to file for the extension as a matter of course,

---

[32] *See* Declaration of Trustee, Doc. No. 1065.

[33] Further, the accountants' engagement letter for preparing the 2010 Return, dated March 29, 2011, stated:  "[a]s we discussed, these tax returns are currently delinquent.  The Internal Revenue Service and/or State of Florida may assert various penalties against the Company.  If any penalties are assessed, they will solely be the responsibility of [Debtor].  In addition, elections, if any that were required to be made on timely filed returns, may no longer be available."  On November 14, 2011, the IRS assessed a late filing penalty against the Debtor pursuant to IRC § 6698 for that return, but have not pursued those penalties at this time.

[34] July 24, 2017 hearing transcript (Doc. No. 1077), pp. 15-20.

[35] *Id*. at 15.  Trustee testified that he did not recall discussing an extension with the accountant, and instead simply assumed that one would be filed based upon previous dealings.  Until it was five months delinquent, trustee did not file his application to employ an accountant to prepare the 2011 Return.

even though they had not yet been retained to do that.[36]  This record does not establish ordinary business care and prudence.

Even if the Trustee's assumptions were justified, this does not constitute reasonable cause.  A taxpayer or reporting entity has a non-delegable duty to timely file a tax return,[37] and that duty is not excused because of reliance on an agent.[38]  A party required to file a tax return cannot passively rely on an accountant to timely file a return[39] or an application for an extension to file the return.[40]

Also, there is no evidence that the Trustee was unable to comply with his obligations because of events beyond his control.  Filing for an extension request requires only a "very simple form, a low level formality [that] doesn't even have to be signed."[41]  The Trustee acknowledges that "filing an extension for a tax return is a fairly simple, nominal event."[42]  The complexities to which the Trustee was attending are irrelevant.  The issue here is the failure to

---

[36] The Trustee testified that he "could have filed it [himself]," but he expected the accountant to file it as part of the service that they were providing.  *Id.* at 15-20.

[37] *McMahan v. Comm'r*, 114 F.3d 366, 369 (2nd Cir. 1997) (citing *U.S. v. Boyle*, 469 U.S. 241 (1985)); *Fleming v. U.S.*, 648 F.2d 1122, 1125 (7th Cir. 1981).  "The duty to file a return and to pay taxes on time is plainly placed on the taxpayer."  *McMahan*, 114 F.3d at 369.  "Unlike a substantive issue of tax law for which a taxpayer must rely on an expert, the deadline for filing a return is unambiguous and easily ascertainable."  *Id.*

[38] *Boyle*, 469 U.S. at 252; *McMahan*, 114 F.3d at 369 ("[R]eliance on an agent for the ministerial task of filing a tax return by the statutory deadline does not constitute reasonable cause.").

[39] *Wesley v. U.S.*, 369 F.Supp.2d 1328, 1331 (N.D. Fla. 2005); *Olsen Assocs, Inc. v. U.S.*, 853 F.Supp. 396, 400 (M.D. Fla. 1993); *Estate of Cox v. U.S.*, 637 F.Supp. 1112, 1115 (S.D. Fla. 1986) ("Reliance upon an accountant does not excuse the [taxpayer].").

[40] *McMahan*, 114 F.3d at 369; *Fleming*, 648 F.2d at 1126-27.

[41] July 24, 2017 hearing transcript (Doc. No. 1077), p. 16.

[42] *Id.* at 19.

timely file a simple request for an extension.  Accordingly, reasonable cause does not exist to waive the § 6698 penalties.[43]

Claim Status

Nevertheless, it is appropriate in this case to deny the United States' claim as an administrative expense under § 503(b) and to equitably subordinate it.  First, the claim does not fall within the statutory category of administrative expenses for tax penalties.  Section 503(b)(1)(C) only provides for administrative expense status to "any fine, penalty, or reduction in credit relating to a tax of a kind specified in subparagraph (B) . . . ."  Subparagraph (B) of § 503(b)(1) refers to "any tax *incurred by the estate* . . . ."[44]  The United States' claim for § 6698 penalties does not relate to any tax owed by the Debtor or the bankruptcy estate.[45]  The estate was required to file an informational return; but, the tax liability was passed through to the limited partners.  The IRC § 6698 penalty is only coercive of compliance with the reporting deadlines.   Accordingly, the penalty claim is not entitled to administrative status under § 503(b)(1)(C).

The United States asserts, however, that the claim should be allowed as a "generic" administrative expense, citing a 2015 decision by a California bankruptcy court, *In re 800Ideas.com, Inc.*[46]  In that case, the estate was assessed penalties because the Chapter 7 trustee

---

[43] *See Hudson Oil*, 91 B.R. at 932 (reasonable cause does not arise when a taxpayer has sufficient time and ability to file a return or a request for extension, but fails to do so).  *See also, Boyle*, 469 U.S. at 246 n. 4 ("Congress obviously intended to make absence of fault a prerequisite to avoidance of the late-filing penalty. . . .  A taxpayer . . . must therefore prove that his failure to file on time was the result neither of carelessness, reckless indifference, or intentional failure.")

[44] Emphasis added.

[45] *In re Amici*, 197 B.R. 696, 697 (M.D. Fla. 1996) (Section 6698 penalties "[do] not relate to a tax").  *See also In re 800Ideas.com, Inc.*, 527 B.R. 701, 704 (Bankr. S.D. Cal. 2015) (penalties assess pursuant to § 6699 for not timely filing an S corporation tax return do not pertain to taxes incurred, and therefore are not covered under § 503(b)(1)(C)).

[46] 527 B.R. 701, 702 (Bankr. S.D. Cal. 2015).

did not timely file the corporate tax return for an "S Corporation," which, like a partnership, is a

pass-through entity whose income is taxed at the shareholder level.[47]  There, the court accepted

the United States' argument that its claim for late-filing penalties was entitled to administrative

expense priority.[48]  The court determined that the late-filing penalty was excluded from

§ 503(b)(1)(C), but reasoned that a trustee was "not exempt from his obligation to comply with

federal tax reporting requirements"[49] and allowed the claim as a general, unlisted administrative

expense under § 503(b).[50]

     This Court declines to adopt that reasoning.  First, the Court must look at the statute's

plain meaning when interpreting the Code.[51]  Section 503(b)(1)(B) and (C) specifically state

what types of penalties are entitled to allowance as an administrative expense.  It is appropriate

to give meaning to the exclusion of penalties that are unrelated to taxes owed by the bankruptcy

estate.  Additionally, allowing the United States' claim as an administrative expense would not

benefit the estate, but, instead, would harm unsecured creditors who were without fault for the

untimely 2011 Return.

---

[47] *Id.  See* IRC § 1363(a).

[48] 527 B.R. at 708.

[49] *Id*. at 704, 706.  "Unless the penalties are payable on a priority basis at least equal to Trustee's commission in the case, in effect, the Trustee is exempt from any consequence of his noncompliance."  *Id*. at 706.  "Further, no legitimate purpose would be served by permitting *the Trustee* to escape any consequences of his unreasonable inaction."  *Id*. at 704 (emphasis added).

[50] *Id*. at 708.

[51] *U.S. v. Ron Pair Enters, Inc.*, 489 U.S. 235, 241 (1989) (Where "the statute's language is plain, 'the sole function of the courts is to enforce it according to its terms.'"); *In re Kipnis*, 555 B.R. 877, 882 (Bankr. S.D. Fla. 2016).  A court should only deviate from the plain language when following the unambiguous language would produce a result demonstrably contrary to the intent of the drafters.  *Ron Pair*, 489 U.S. at 242.

In *800ideas.com*, the impact of the penalty fell on the trustee because the claim, as an administrative expense, reduced the trustee's compensation.[52]  Further, the debtor's failure to timely file returns impacted collection of the underlying taxes, because the shareholders received their Schedule K-1's late.[53]

Neither of these issues are present here.  The Trustee will be paid in full, regardless of the United States' claim receiving administrative status or not, and there is nothing in the record to indicate that Debtor's partners' K-1's were untimely or that their individual returns were not timely or accurately filed because of Trustee's failure to timely request an extension of the filing deadline.  Accordingly, the circumstances are dissimilar enough to deny the United States a "generic" § 503 administrative expense claim.

There is ample equitable cause, however, to subordinate the United States' claim. Section 510(c)(1) allows a court, under principles of equitable subordination, to "subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim." The equitable subordination doctrine can be applied even when a claim has apparent legal validity.[54]  While equitable subordination traditionally requires a showing of misconduct by the creditor,[55] this is not a requirement for tax penalties.[56]  Therefore, a tax penalty claim may be

---

[52] 527 B.R. at 705.

[53] *See id.* at 703.

[54] *In re LightSquared Inc.*, 511 B.R. 253, 346 (Bankr. S.D.N.Y. 2014) (citing *In re Adler, Coleman Clearing Corp.*, 277 B.R. 520, 563 (S.D.N.Y. 2002)).

[55] *Matter of Lemco Gypsum, Inc.*, 911 F.2d 1553, 1556 (11th Cir. 1990); *In re Mobile Steel Co.*, 563 F.2d 692 (5th Cir. 1977).

[56] *In re Airlift Int'l, Inc.*, 120 B.R. 597 (S.D. Fla. 1990); *In re Friedman's, Inc.*, 356 B.R. 766, 776-77 (Bankr. S.D. Ga. 2006) ("In the context of penalty/punitive claims, *Mobile Steel's* three-prong test should not be applied inflexibly but rather as a non-exclusive list of factors that may be considered.  This means that the absence of creditor misconduct is not fatal to an action to equitably subordinate a claim."); *In re Toberman*, 2006 WL 4041894, at *4 (Bankr. D. Minn. Nov. 20, 2006) ("equitable subordination no longer requires, in all circumstances, some inequitable conduct on the part of a creditor, but may be applied to subordinate penalty claims to claims for

reordered in a given case under "principles of equitable subordination," as warranted by

particular facts.[57]

Here, the equities justify subordination of the United States' claim to the claims of

general unsecured claims:

1. The timing of the filing of the Debtor's Form 1065 information return had no bearing on the IRS collecting the underlying taxes for 2011, which were payable by the limited partners.[58]

2. The magnitude of the penalty claim is based on the number of partners.[59] A partnership with only 30 partners would be assessed one-tenth of the penalty of a non-compliant firm with 300 partners. But, the number of partners is irrelevant to the compliance with the filing deadlines that the IRS § 6698 penalty is meant to coerce.

---

pecuniary loss"); *In re Cassis Bistro, Inc.*, 188 B.R. 472, 474 (Bankr. S.D. Fla. 1995) ("tax penalty claims may be subordinated without proof of creditor misconduct"); *Diasonics, Inc. v. Ingalls*, 121 B.R. 626, 629 (Bankr. N.D. Fla. 1990) ("[W]here a penalty tax or a claim for punitive damages is involved the claim may be subordinated without inequitable conduct."). *See, e.g., Burden v. U.S.*, 917 F.2d 115, 120 (3rd Cir. 1990); *Schultz Broadway Inn v. U.S.*, 912 F.2d 230, 234 (8th Cir. 1990); *In re Virtual Network Servs. Corp.*, 902 F.2d 1246, 1250 (7th Cir. 1990); *see also In re Hedged-Investments Assocs., Inc.*, 380 F.3d 1292, 1301 (10th Cir. 2004) (there is a "no-fault" equitable subordination exception for tax penalties on a case-by-case basis), *In re Baker & Getty Fin. Servs., Inc.*, 974 F.2d 712, 719 (6th Cir. 1992) ("Numerous courts have similarly subordinated claims for punitive damages without making a finding of inequitable conduct.").

[57] *U.S. v. Noland*, 517 U.S. 535, 540, 116 S.Ct. 1524, 134 L.Ed.2d 748 (1996). "Section 510(c) may of course be applied to subordinate a tax penalty . . . ." *Id.* "Thus, 'principles of equitable subordination' may allow a bankruptcy court to reorder a tax penalty in a given case." *Id.* "[T]he adoption in § 510(c) of 'principles of equitable subordination' permits a court to make exceptions to a general rule when justified by particular facts." *Id.* However, a claim's status as a penalty, alone, is not cause for equitable subordination. *Id* at 536. Instead, a penalty claim may only be subordinated when warranted by the particular facts. *Friedman's*, 356 B.R. at 777; *Cassis Bistro*, 188 B.R. at 475 ("Although the Debtor does not have to prove inequitable conduct to justify subordination of tax penalty claims, the Court must still find that subordination is justified by the equities in this case."); *see A.G. Fin. Serv. Ctr., Inc.*, 395 F.3d 410, 414 (7th Cir. 2005); *Merrimac Paper Co., Inc. v. Harrison (In re Merrimac Paper Co., Inc.)*, 420 F.3d 53, 62 (1st Cir. 2005); *In re M & S Grading, Inc.*, 2010 WL 2860096, at *5 (Bankr. D. Neb. July 19, 2010) ("[T]ax penalties may not be subordinated merely because they are tax penalties; to succeed, the plaintiff must establish inequitable conduct by the IRS or otherwise explain how the equities favor subordination of the penalties for its benefit."); *Matter of Best Refrigerated Exp., Inc.*, 192 B.R. 503, 512 (Bankr. D. Neb. 1996) ("[T]he tax authorities' post-petition claims for penalties of debtor's post-petition conduct may be subordinated if the equities of the case permit.").

[58] The fact that extension requests are freely given further indicates that Debtor's filing, in this instance, had no bearing or effect on the IRS's ability to operate or tax. Debtor's filing was by the extension due date offered to all taxpayers; it was not a protracted delay that would affect the IRS or the partners (who timely received K-1s) and their individual returns.

[59] As stated previously, the penalty is calculated at $195 x months delinquent x number of partners.

3.  The parties that would be impacted by the United States' claim are the general unsecured creditors who had nothing to do with the late filing by the Trustee.[60]

For the foregoing reasons, it is

**ORDERED that:**

1.  The Debtor's Objection is hereby SUSTAINED in part.

2.  The United States' claim (Claim No. 424-1) shall be allowed in the amount of $358,230.61.

3.  A portion of said claim, in the amount of $356,965.46, will be allowed as a general unsecured claim, but will be equitably subordinated to payment in full of all other allowed general unsecured claims.

4.  The $1,535.15 balance of Claim 424-1, attributable to undisputed FICA taxes, shall be allowed as an administrative expense claim.

Clerk's office to serve.

---

[60] Allowing the United States' claim as an administrative expense would result in substantial dilution (of about 1/3) of the return to general unsecured creditors. *See Schultz Broadway Inn v. U.S.*, 912 F.2d at 234 ("under the facts of this case the general unsecured creditors who suffered actual losses should receive preference over the Government's claim for a non-pecuniary loss tax penalty . . . . Certainly, this accords with the legislative history . . . which generally prefers claims for actual losses over purely punitive claims."). *See In re Gill*, 574 B.R. 709, 716 (9th Cir. B.A.P. 2017) (citing *Simonson v. Granquist*, 369 U.S. 38, 41, 82 S.Ct. 537, 7 L.Ed.2d 557 (1962)) ("Innocent creditors should not be punished for the actions of delinquent debtor taxpayers."); *Cassis Bistro*, 188 B.R. at 475 ("It would be inequitable for [the payment to the unsecured creditors] to be further diluted by having the wrongdoer's estate pay the penalty claims to the detriment of innocent creditors."); *Airlift Int'l Inc.*, 120 B.R. at 601-02 (stating that a penalty is inequitable when the purpose is deterrence, but that deterrence is not present and is at the sole detriment of the innocent creditors).